UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FREDERICK WILLECKE and
TARA JONES WILLECKE,

        Plaintiffs,                          Case No. 06-11695
                                                          Honorable Julian Abele Cook, Jr.

v.

JOHN R. TOTH and JODY L. TOTH,

        Defendants.

ORDER

On April 7, 2006, the Plaintiffs, Frederick Willecke and Tara Jones Willecke, filed a complaint, in which they charged the Defendants, John R. Toth and Jody L. Toth,[1] et al., with acts of (1) fraud, (2) fraud in the inducement, (3) silent fraud, (4) conspiracy to commit fraud, (5) innocent misrepresentation, and (6) breach of contract.[2] All of these claims by the Plaintiffs are related to the sale of a house which is commonly known as 1379 Holland Street in Birmingham, Michigan. ("Holland Street property"). On March 3, 2008, the Plaintiffs filed a motion for the

---

[1] John R. Toth and Jody L. Toth appear in this lawsuit as Defendants without the benefit of an attorney.

[2] On August 23, 2007, the Court granted a motion for summary judgment in favor of Brent Kozel and Accurate Appraisal, both of whom had been previously named as Defendants in this case. As a result, John and Jody Toth are the only remaining Defendants in this matter. Unless stated otherwise and for the sole purpose of avoiding unnecessary redundancy within the text of this order, any singular reference by the Court to "Toth" will be attributed only to the conduct of the Defendant, John R. Toth.

1

entry of a summary judgment to which the Defendants responded on April 14, 2008.[3]

For the reasons that are stated below, the Court (1) grants the Plaintiffs' motion for the entry of a summary judgment in part, (2) denies it in part, and (3) enters a judgment against the Defendants in the amount of $304,393.99.

I.

The Holland Street property was purchased in 1995 by Toth for the sum of $89,000. After causing an existing house on the property to be demolished, he initiated efforts to construct a new dwelling on the same parcel of land. However, because of a subsequent deterioration in his financial situation, he made an effort to refinance the unfinished house which, if successful, would enable him to obtain those monies that would be necessary in order to complete its construction.

Toth, after receiving estimates of $45,000 to $60,000 to complete the work on the Holland Street property, was able to borrow $25,000 from his brother. Thereafter, he attempted to obtain a Certificate of Occupancy from the City of Birmingham. However, after being informed by the municipal officials that such a document would cost approximately $5,000, he decided against pursuing this approach because of his financial circumstances. Ultimately and through the efforts of Richard Dalberth,[4] Toth was able to secure a purchaser for the Holland Street property who had also expressed a willingness to resell the property to him and his wife after the closing had been

---

[3] For reasons that are not clear and do not appear to be related to the substance of the controverted issues herein, this pleading did not appear on the docket until July 11, 2008.

[4] Richard Dalberth was a senior mortgage specialist at Mortgage IT during all of the times that are relevant to this proceeding. He, purportedly a colleague of the Plaintiff, Frederick Willecke, agreed to assist Toth in the financing aspects of this process.

completed.[5] As the time approached for the Plaintiffs to finalize their acquisition of the Holland Street property, Toth informed Dalberth that (1) he had not obtained a Certificate of Occupancy from the Birmingham municipal government, and (2) a surveyor, after having conducted a measurement of the house, determined that the existing grade was six inches lower than described in the building plans. Toth submits that he incorrectly assumed that (1) the results of this survey as well as his inability to obtain of a Certificate of Occupancy from the City of Birmingham had been conveyed to the Plaintiffs by Dalberth, and (2) the parties would still be able to consummate the real estate transaction under these circumstances.[6]

The Plaintiffs deny that either of them were ever given this information by Toth or Dalberth, More importantly, it is their joint contention that they were told by Toth that he had obtained a valid Certificate of Occupancy for the property on Holland Street. Thus, they submit that their reliance upon this misinformation prompted them to proceed with the sale which resulted in $79,000 in proceeds being given to the Defendants and $21,870 to Dalberth as his compensation for services rendered.[7]

---

[5] During the closing conference, one of the Plaintiffs, Tara Jones Willecke, entered into a lease agreement with the Defendants, the terms of which began on August 1, 2005 and ended on February 28th of the following year. This lease contained a provision whereby the Defendants were given an option to repurchase the property within four months for $650,000. As a part of their financing efforts, the Defendants agreed to (1) obtain a second mortgage on the Holland Street property and (2) loan $65,000 to the Plaintiffs. They also agreed that if the Defendants failed to repurchase the Holland Street property within the above-mentioned time period, she would be entitled to dispose of the parcel without recourse.

[6] It should be noted that Toth filed for statutory protection under Chapter 7 of the Bankruptcy Code in January 2005. He sought and subsequently obtained an approval from the bankruptcy court to proceed with the sale of the Holland Street property.

[7] According to Toth, he spent approximately $19,000 of the proceeds on additional improvements of the Holland Street property.

On July 19, 2005, the Plaintiffs entered into a purchase agreement[8] with the Defendants. During the following month, Toth informed Dalberth that he and his wife would be unable to repurchase the property because they were relocating to Florida. This lawsuit followed.

II.

When deciding a motion for summary judgment, the Court must consider any pleadings and discovery materials on file in a light that is most favorable to the non-moving parties. Fed. R. Civ. P. 56©; see *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). The purpose of a summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving parties, therefore, bear the burden of showing the absence of any genuine issue of a material fact. *Id*. at 323. A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, a summary judgment is appropriate wherein (1) the evidence offered in support of the motion is so overwhelming that the proponents must prevail as a matter of law, *Anderson*, 477 U.S. at 252, or (2) the opponents fail to rebut the motion with evidence that establishes a question of a material fact that is of consequence to the case. *Celotex*, 477 U.S. at 322; *see also* Fed. R. Civ. P. 56(e)(2). Specifically, the nonmoving parties may not rest on their pleadings but must identify specific facts

---

[8] Paragraph 13 of the purchase agreement between the parties stated that the Holland Street property did not violate any zoning ordinances. The parties' agreement also indicated that the Defendants would assume and pay for any requite inspections, including a Certificate of Occupancy. Furthermore, their agreement confirmed that the Plaintiffs could cancel the contract if the Defendants failed to correct any ordinance violation problems.

that can be established by admissible evidence which demonstrate the existence of a genuine issue of a material fact for trial. *Anderson*, supra, at 247-48.

Finally, and addressing the standards of review for those pleadings that have been submitted by *pro se* litigants, the Sixth Circuit Court of Appeals opined that "[w]e generally hold pro se pleadings to a less stringent standard than those drafted by an attorney. Nevertheless, liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 Fed. Appx. 338, 344 (6th Cir. 2006) (unpublished).

III.

According to the law in Michigan, the aggrieved parties, who make a claim of fraud by a tortfeasor, must demonstrate the following elements: (1) the defendant made a material representation as a positive assertion; (2) the material representation was false; (3) when the defendant made the material representation, he knew that it was false, or made it recklessly without any knowledge of its truth; (4) the defendant made the material representation with the intention that it should be acted upon by the plaintiffs; (5) the plaintiffs acted in reliance upon the material representation; and (6) the plaintiffs suffered an injury. *Brownell v. Garber*, 199 Mich. App. 519 (1993).

The Plaintiffs argue that they are entitled to a summary judgment, contending that there are no genuine issues of a material fact as to any of the elements of fraud. In their response, it should be noted that the *pro se* Defendants have not challenged the Plaintiffs' allegations of fraud "by affidavits or as otherwise provided in [Fed. R. Civ. P. 56]." [9] Fed. R. Civ. P. 56(e)(2).

---

[9]The Defendants have not submitted any affidavits, depositions, or other factual materials that there is "evidence upon which the jury could reasonably find for the [non-moving party.]" *Anderson*, supra, at 252. Their response is merely an argument which fails to make a single

5

Addressing the first element of this claim by the Plaintiffs, the Court notes that the Defendants made material representations regarding the Holland Street property including, among other things, that they were (1) in possession of a Certificate of Occupancy, and (2) unaware of any non-compliant conditions or zoning violations relating to their house. Hence, this first element has been satisfied.

Regarding the second element, these representations by the Defendants were false, in that the house was not completed prior to closing and no Certificate of Occupancy had been issued by the local government authorities. In fact, both of the Defendants knew that these statements, which had been made to the Plaintiffs prior to closing, were false. In deposition testimony on March 24, 2007, Judy Toth admitted that the master bathroom, fireplace, and basement in the house had not been completed**.** In addition, her husband knew that he had not garnered a Certificate of Occupancy prior to the closing.

Furthermore, a review of the record supports the Plaintiffs' contention that the third element has been satisfied. In fact, the Defendants have failed to produce any evidence whatsoever that they or their agent ever informed the Plaintiffs that the Holland Street property did not have a Certificate of Occupancy.

Turning to the fourth and fifth elements of this fraud claim, the Defendants have not challenged the Plaintiffs' assertion that (1) these false representations were made with an intent to induce them to rely upon their statements because of their need to sell the Holland Street property to improve their declining financial situation and (2) they reasonably relied upon Toth's comments

---

reference to the record or to any controlling legal authorities which would support their position on this claim by the Plaintiffs.

relating to the condition of the Holland Street property as well as his ability to obtain a Certificate of Occupancy. Under these circumstances, the fourth and fifth elements of this fraud claim have been satisfied.

With regard to the sixth element of the fraud claim, the Plaintiffs have demonstrated that they have collectively suffered direct and proximate damages which were caused by the false statements by the Defendants including those costs that are associated with the completion of their substantially unfinished house and bringing the house up to code through foundational, structural, and grading repairs.

For all of these reasons the Court must, and does, grant the Plaintiffs' motion for the entry of a summary judgment as it relates to their allegations of fraud by the Defendants..

IV.

In 1995, the Michigan Court of Appeals declared in *Samuel D. Begola Servs. v. Wild Brothers*, 534 N.W.2d 217, 219 that "[f]raud in the inducement occurs where a party materially misrepresents *future* conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." (emphasis added)

Here, the Plaintiffs claim that "the [Defendants] committed fraud in the inducement of the sale of the [Holland Street property] by materially misrepresenting that [the house] had a Certificate of Occupancy when they knew that it did not and would not have one prior to closing since the house was not complete and was non-compliant with zoning requirements." In their response to this aspect of the Plaintiffs' motion for summary judgment, the Defendants have reacted only with general allegations and denials rather than with affidavits or other appropriate evidence as required by Fed. R. Civ. P. 56.

In its assessment of this claim, the Court concludes that the Plaintiffs have failed to demonstrate that there are no genuine issues of a material fact regarding this issue. The Plaintiffs contend that the Defendants materially misrepresented that they were in possession of a Certificate of Occupancy relating to the Holland Street property at the time of the closing – not that they would get one in the future. Thus the Court, concluding that there is an insufficient basis upon which to grant a summary judgment on this issue, denies the Plaintiffs' motion for a summary judgment as it relates to their fraud in the inducement claim.

V.

The Plaintiffs also seek to obtain a summary judgment in support of their silent fraud claim. Under Michigan law,

> in order to establish a claim of silent fraud, there must be evidence that the seller made some sort of representation that was false. It is not enough . . . that the seller had knowledge of the defect and failed to disclose it; rather, the seller must make some type of misrepresentation. A misrepresentation need not necessarily be words alone, but can be shown where the party, if duty-bound to disclose, intentionally suppresses material facts to create a false impression to the other party.

The Plaintiffs argue that the Defendants' failed to (1) comply with the Seller Disclosure Act, Mich. Comp. Laws § 565.915 *et seq.*, which imposes an affirmative duty upon them - as sellers - to disclose information (such as the conditions of various appliances, types of insulation, easements, and nonconforming uses), (2) file the appropriate disclosure statement, (3) advise them that they did not have a Certificate of Completion prior to the date of the closing transaction, and (4) provide each of them with a full disclosure of all pertinent information about the Holland Street property. According to the Plaintiffs, these failings by the Defendants support their silent fraud claim.

In *Hord v. Environmental Research Inst.*, 463 Mich. 399, 412 (2000), the Michigan Supreme Court declared that "mere nondisclosure is insufficient [to establish silent fraud.] There

must be circumstances that establish a legal duty to make a disclosure." The court also stated that "a legal duty to make a disclosure will arise most commonly in a situation where inquiries are made by the plaintiff, to which the defendant makes incomplete replies that are truthful in themselves but omit material information." *Id*.

The Court does not believe that these accusations which address the Defendants' alleged misconduct - especially when viewed in a light that is most favorable to them - constitutes silent fraud. In their arguments, the Plaintiffs have not convinced the Court that they proffered good and sufficient inquiries to the Defendants about those issues which ultimately resulted in their receipt of the allegedly incomplete replies. Thus, the Court determines that there remains a genuine issue of a material fact regarding this claim. Therefore, the Plaintiffs' motion for summary judgment as it relates to their silent fraud claim is denied.

VI.[10]

In this motion, the Plaintiffs contend that there are no genuine issues of a material fact regarding the Defendants' alleged commission of innocent representation. Inasmuch as the Court has already resolved the Plaintiffs' allegations of fraud (i.e., the Defendants knowingly misrepresented the condition of the Holland Street property), their claim of innocent representation is now moot. Thus, the Plaintiffs' motion for summary judgment under this count is denied for reasons of mootness.

VII.

---

[10]On August 23, 2007, the Court granted the Plaintiffs' motion for partial summary judgment against the Defendants on their breach of contract claim. The Plaintiffs' negligent misrepresentation claim related only to Brent Kozel and Accurate Appraisal, neither of whom are parties (i.e., Defendants) in this matter.

9

The Plaintiffs also seek to obtain a summary judgment on the basis of their contention that the Defendants engaged in a conspiracy to commit fraud. Civil conspiracy to commit fraud requires a combination of two or more persons to accomplish, by some concerted action, either (1) a criminal or unlawful purpose or (2) a lawful purpose by criminal or unlawful means. *Temborius v. Slatkin*, 157 Mich. App. 587, 599-600 (1986). Thus, the law in Michigan obligates the Plaintiffs to prove the existence of an agreement or a preconceived plan to do an unlawful or criminal act. "Direct proof of agreement is not required, however, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference." *Id.* at 600.

In making this claim, the Plaintiffs allege that the Defendants and Dalberth "colluded to defraud [them] relative to the sale of the Holland Street Property." It is also their position that Judy Toth "fraudulently transferred her interest in [another property] for $1.00, in an attempt to put this asset beyond the reach of [the] Plaintiffs as potential judgment creditors." Finally, they submit that Toth "wanted to sell this house at all costs, and to this end, devised a scheme with his wife and [] Dalberth to defraud [the] Plaintiffs into purchasing an overvalued and unfinished home."

The Defendants did not respond to these allegations with any specific evidence in opposition to the accusations. However, the Court, after reviewing the record, concludes that the Plaintiffs have not proffered enough evidence to show - even circumstantially - that the purported misconduct by the Defendants and their agent constituted an agreement or a preconceived plan to undertake the unlawful or criminal acts which have been attributed to them. Therefore, the Court must thus deny the Plaintiffs' motion for summary judgment as to this claim.

VIII.

In a tort action, a plaintiff may recover damages for "all injuries resulting directly from [the] wrongful act, whether foreseeable or not, provided that the damages are the legal and natural consequences of the wrongful act and are such as, according to common experience in the usual course of events, reasonably might have been anticipated." *Antoon v. Community Emergency Medical Service, Inc*., 190 Mich. App. 592, 596 (1991).

The Plaintiffs ask the Court to enter a judgment against the Defendants in the amount of $304,393.99, as a result of their breach of contract and fraudulent conduct. In support of this figure, they have submitted the following documents: (1) a declaration and supporting materials from a "damages" expert, Norman Thomas, (2) a copy of the inspection report relating to the Holland Street property by Davis Inspection Services,[11] (3) photographs which depict the grading and structural issues that existed during the construction which "had to be fully addressed and repaired by [them] at great expense," (4) the City of Birmingham Inspection Report, (5) invoices which reflect the other costs that were incurred by them, and (6) a signed declaration by Fred Willecke who outlined the total amount of damages that he and his wife sustained as a result of the Defendants' claimed misconduct.

The Court is satisfied that the Plaintiffs have proffered a sufficiency of documents which support their applications for damages against the Defendants on those claims in which liability has been determined in this order.

---

[11] This inspection report appears to have been prepared on behalf of the Plaintiffs.

IX.

For the reasons that have been set forth above, the Court (1) grants the Plaintiffs' motion for a summary judgment in part, (2) denies it in part, and (3) enters a judgment in their favor and against the Defendants in the sum of $304,393.99, plus costs, fees and the imposition of statutory interest as authorized by law.

IT IS SO ORDERED.

Dated :  March 31, 2009              s/Julian Abele Cook, Jr.
     Detroit, Michigan                  JULIAN ABELE COOK, JR.
                                           United States District Court Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2009.

                                                       s/ Kay Doaks
                                                       Case Manager